**Kerry DENNISON, Plaintiff**

v.

**PENNSYLVANIA DEPARTMENT OF CORRECTIONS, SCI–Mahanoy; Michael R. Youron; Martin L. Dragovich; Thomas P. Kowalsky; James Unell; and Ed Klem, Defendants**

**No. 3:01 CV 56.**

United States District Court, M.D. Pennsylvania.

June 9, 2003.

Susan J. Forney, Office of Attorney General, Harrisburg, PA, Jonathan W. Kunkel, PA Dept. of Corrections, Office of Chief Counsel, Camp Hill, PA, for Defendant.

Peter G. Loftus, Waverly, PA, for Plaintiff.

### MEMORANDUM

MUNLEY, District Judge.

Before the Court for disposition is defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff is Kerry Dennison. Defendants are the Pennsylvania Department of Corrections, SCI–Mahanoy,[1] ("SCI–Mahoney"), Michael R. Youron, Martin L. Dragovich, Thomas P. Kowalsky, James Unell, and Ed Klem. Defendants' motion has been fully briefed and is ripe for disposition. For the reasons that follow, we will grant defendants' motion in part and deny it in part.

### I. Background

Plaintiff Kerry Dennison began working at SCI–Mahanoy as a Psychological Services Associate in November of 1995. Officials at SCI–Mahanoy fired Dennison on

---

1. In their brief in support of their motion for summary judgment, defendants appear to treat the Pennsylvania Department of Corrections and SCI–Mahanoy as separate defendants. (Doc. 35 at 7–8). Dennison's complaint lists the Department of Corrections and SCI–Mahanoy as a single defendant and we will treat them as such. (Compl. ¶ 6).

June 30, 2000. At the time of his dismissal, Dennison had reached the level of a Psychological Services Associate 2. Dennison alleges that while he worked at SCI–Mahanoy the individual defendants continually harassed, intimidated, and threatened him in an effort to force him out of his position. Defendants took these actions in retaliation for Dennison's complaints regarding discrimination in employment practices and parole determinations.

The EEOC issued Dennison a right to sue letter on August 3, 2000. On October 26, 2000, Dennison filed the instant complaint, seeking damages and other relief for violations of federal and Pennsylvania law. In Count I of his complaint, Dennison seeks relief pursuant to 42 U.S.C. §§ 1983, 1984, 1985, and 1988 for defendants' alleged violations of the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Counts II and III allege that the defendants conspired to violate Dennison's First, Fourth, Fifth and Fourteenth Amendment rights in violation of 42 U.S.C. §§ 1983, 1984, 1985, 1986, and 1988. In Counts IV and V, respectively, Dennison alleges that defendants violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act, ("PHRA"), 43 PA. STAT. § 951 *et seq.* Count VI alleges intentional infliction of emotional distress. Count VII alleges wrongful discharge, and Count VIII seeks damages for violation of the Pennsylvania Whistleblower Law, 43 PA. STAT. § 1421 *et seq.*

On March 8, 2001, Defendants SCI–Mahanoy and Dragovich filed a motion to dismiss Dennison's complaint against them in its entirety. On June 8, 2001, we dismissed all claims against SCI–Mahanoy except for Dennison's Title VII claim (Count IV), PHRA claim (Count V), and wrongful termination claim (Count VII). With regard to Defendant Dragovich, we dismissed all of Dennison's claims against him in his individual capacity, and we dismissed all claims against him in his official capacity except for the Title VII (Count IV), PHRA (Count V), and wrongful termination claims (Count VII). On May 29, 2002, all defendants filed the instant motion seeking summary judgment on all of Dennison's remaining claims.

## II. Jurisdiction

The Court exercises jurisdiction over this dispute pursuant to its federal question jurisdiction, 28 U.S.C. § 1331, and supplemental jurisdiction, 28 U.S.C. § 1367. Pennsylvania law applies to those claims considered pursuant to supplemental jurisdiction. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

## III. Standard of Review

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Knabe v. Boury,* 114 F.3d 407, 410 n. 4 (3d Cir.1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the

party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chem. Co.*, 898 F.2d 946, 949 (3d Cir.1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505 (1986). A fact is material when it might affect the outcome of the suit under the governing law. *Id.* Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

## IV. Discussion

Dennison's eight count complaint can be broken down into five general categories:

claims brought pursuant to 42 U.S.C. § 1983, (section 1983), conspiracy claims, Title VII and PHRA claims, Pennsylvania common law tort claims, and Pennsylvania Whistleblower Law claims. We shall address defendants' motion accordingly.

### A. Section 1983 Claims [2]

■ In Count I of his complaint, Dennison alleges that Defendants Youron, Kowalsky, Unell, and Klem violated his rights under the First and Fourteenth Amendments to the United States Constitution when he worked at SCI–Mahanoy, and he seeks damages and other relief pursuant to 42 U.S.C. § 1983.[3] Those defendants now move for summary judgment on each of Dennison's claims.[4]

■ Section 1983 provides, in relevant part:

Every Person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities se-

---

**2.** Dennison has brought a section 1983 conspiracy claim against the defendants. We will address that claim later in this memorandum.

**3.** Dennison also alleges in Count I of his complaint that Defendants Youron, Kowalsky, Unell, and Klem violated his rights under the Fourth and Fifth Amendments. Dennison has since withdrawn his Fourth and Fifth Amendment claims. (Doc. 44 at 15). Accordingly, we will grant judgment on Dennison's Fourth and Fifth Amendment claims.

Dennison also seeks relief in Count I of his complaint under 42 U.S.C. §§ 1984, 1985, and 1988. Sections one and two of 42 U.S.C. § 1984 were declared unconstitutional by the Supreme Court in 1883, *U.S. v. Singleton,* 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883), and

sections three and four were repealed by Congress in 1948. Accordingly, Dennison has no viable claims under 42 U.S.C. § 1984, and we will grant summary judgment to defendants.

Section 1985 of Title 42 concerns racially or class based private conspiracies to deny equal protection of the laws and will be addressed later in this opinion. Section 1988 of Title 42 concerns attorneys fees in civil rights cases and need not be discussed further.

**4.** Dennison was fired as of June 30, 2000. The statute of limitations for actions under 42 U.S.C. § 1983 in Pennsylvania's federal courts is two years. *Bougher v. Univ. of Pittsburgh,* 882 F.2d 74, 78 (3d Cir.1989); 42 PA. CONS. STAT. § 5524. Dennison filed suit against the defendants on October 26, 2000, well within the statute of limitations.

cured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. Thus, section 1983 is not itself a source of substantive rights. *Graham v. Connor*, 490 U.S. 386, 393–394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Instead, it provides a cause of action for the vindication of federal rights. *Id.* To succeed under section 1983, Dennison must establish: 1) that defendants violated a right secured by the Constitution or laws of the United States, 2) acted under color of state law in so doing, and 3) damages. *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 590 (3d Cir.1998). There is no dispute that defendants acted under color of state law in this matter. Whether there is sufficient evidence to support Dennison's claims that defendants violated the First and Fourteenth Amendments to the United States Constitution remains for resolution.

### 1. Official Capacity Claims

 As an initial matter, Defendants Youron, Kowalsky, Unell, and Klem move for summary judgment on Dennison's claims that they are liable in their official capacities for the violation of Dennison's constitutional rights, and we will grant their motion. Official capacity suits are nothing more than suits against an official's employing agency. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). In this case, the employing agency is the Pennsylvania Department of Corrections, which is immune from suit in federal court pursuant to the Eleventh Amendment. *See Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274,

280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (holding that Eleventh Amendment bars suit in federal court against states and their subordinate agencies); *see also* 71 PA. STAT. § 61 (naming the Department of Corrections as an administrative department of the Commonwealth). Accordingly, we will grant defendants' motion for summary judgment on Dennison's section 1983 official capacity suits.

### 2. First Amendment Claims

Dennison alleges in his complaint that Defendants Youron, Kowalsky, Unell, and Klem violated his First Amendment free speech and petition rights by firing him in retaliation for objecting to discrimination in parole determinations and employment practices at SCI–Mahanoy and filing related grievances with government bodies.[5] Defendants move for summary judgment on Dennison's First Amendment claims. They contend that Dennison was fired for violating the Pennsylvania Department of Corrections Code of Ethics, and that there is no evidence to support his allegations of retaliation. We will grant in part and deny in part Defendants Youron, Kowalsky, Unell, and Klem's motion for judgment on Dennison's First Amendment claims.

### a. Free Speech Claims

Dennison's free speech claims can be broken into two broad categories: those concerning the distribution of confidential documents and those not related to the distribution of such documents. We will first address the parties' arguments surrounding Dennison's distribution of confi-

---

**5.** Dennison does not characterize any of his claims as falling under the Petition Clause of the First Amendment. Nonetheless, he does allege that defendants' fired him, in part, for filing grievances and other complaints with

government bodies. Such complaints are analyzed under the law pertaining to the Petition Clause, not the Free Speech Clause. *San Filippo v. Bongiovanni*, 30 F.3d 424, 434–35 (3d Cir.1994).

dential documents, and then we will address Dennison's other free speech claims.

### i. Confidential Document/Free Speech Claims

Dennison admits that he released confidential inmate psychological reports to Ernest Preate, a prison reform advocate, Ron Felton, a local NAACP official, and Fox-TV News in an effort to reveal racial discrimination in parole determinations at SCI–Mahanoy; he argues, however, that his dismissal for the distribution of such records was in violation of the First Amendment.[6] Defendants concede that they fired Dennison for the disclosure of inmate psychological records, but they deny that their actions were in violation of the First Amendment's Free Speech Clause.

 A public employee does not forfeit the First Amendment right to speak on matters of public concern by virtue of public employment. *Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). That right, however, must be balanced against the interests of the public employer in the effective discharge of its public duties. *Id.* When a public employer concedes that it has fired an employee because of speech on a matter of public concern, an ensuing retaliation claim is evaluated under a tripartite balancing test. *Baldassare v. New Jersey,* 250 F.3d 188, 194–95 (3d Cir.2001). First, employees must establish that their speech was protected by the First Amendment. *Id.* at 195. For a public employee's speech to be protected by the First Amendment, it must be on a matter of public concern,

and the employee's interest in the speech must outweigh the opposing interest of the employer in the efficient conduct of its operations. *Connick,* 461 U.S. at 146–54, 103 S.Ct. 1684; *Baldassare,* 250 F.3d at 194–95. Whether a public employee's contested speech addresses a matter of public concern and whether the employee's interest in such speech outweighs the employer's interest in the effective operation of its organization are matters of law for the court. *Baldassare,* 250 F.3d at 195.

 Second, employees must "show [that] the protected activity was a substantial or motivating factor in the alleged retaliatory action." *Id.* Third, public employers can rebut a claim of retaliation by producing evidence that they " 'would have reached the same ... decision even in the absence of the protected conduct.' " *Id.* (quoting *Mount Healthy,* 429 U.S. at 287, 97 S.Ct. 568).[7] The second and third prongs of this test are questions of fact for a jury. *Id.*

 We hold that speech concerning racial discrimination in parole determinations is a matter of public concern as it implicates the process of effective self-governance and equal protection under the law. *See Azzaro v. County of Allegheny,* 110 F.3d 968, 975–80 (3d Cir.1997) (discussing speech on matters of public concern and holding that speech on sexual harassment is a matter of public concern). Dennison alleges that a number of officials at SCI–Mahanoy used race as a criteria in parole determinations. Speech regarding such allegations is intimately related to the

---

**6.** It is not clear from Dennison's briefs and their supporting exhibits whether he alleges that defendants violated the First Amendment by firing him for distribution of confidential materials. In the interest of clarity, however, we will assume that Dennison claims that defendants violated the First Amendment in-

sofar as they fired him for distributing confidential inmate records to unauthorized persons.

**7.** Public employers must rebut evidence of retaliation by a preponderance of the evidence. *Baldassare,* 250 F.3d at 200–01.

trust the citizens of Pennsylvania have in the just operation of their prison system. Accordingly, we have no hesitation in ruling that Dennison's speech, as expressed through the dissemination of confidential prison records, was on a matter of public concern.

We further hold, however, that Dennison's interest in distributing inmate psychological records in an effort to reveal racial discrimination in parole determinations does not outweigh SCI–Mahanoy's interest in keeping such records confidential. As noted above, a public employer need not always subordinate its interest in the efficient provision of services to the public to an employee's speech rights. *Baldassare,* 250 F.3d at 195. A balance must be struck between an employee's right to free speech and the employer's public charge. *Id.*

The public has an undeniable interest in learning of racial discrimination in government operations. *Id.* at 198. Pennsylvania, like many states and the federal government, encourages reports of government impropriety. *See* 43 PA. STAT. § 1421 *et seq.* (protecting public employees who report wrongdoing to appropriate authorities). Nonetheless, SCI–Mahanoy has an overriding interest in keeping inmate psychological reports confidential. Although not briefed by the parties, common sense dictates that such records contain highly personal and sensitive information that is designated confidential for a number of valid reasons. Not the least of these reasons, we presume, is that such reports are generated as a result of psychological care that is designed to both treat inmates and evaluate their potential for rehabilitation and possible parole. If psychological evaluations are not kept confidential, inmates may be less likely to frankly discuss their problems, hampering any possibility they may have for rehabili-

tation. Similarly, prison psychologists may be less likely to record their conclusions with necessary candor out of fear that they could become public. Consequently, the release of confidential, psychological records of inmates has a detrimental and possibly profoundly negative effect on important aspects of SCI–Mahanoy's public responsibilities.

Moreover, under Pennsylvania's Whistleblower Law, 43 PA. STAT. § 1421 *et seq.,* Dennison had an approved avenue for disclosing his concerns regarding racial discrimination in parole determinations. Section 1423 of the Whistleblower law permits employees of public bodies to make good faith reports of wrongdoing to appropriate authorities. 43 PA. STAT. § 1423. Appropriate authorities include those with jurisdiction over regulatory violations. 43 PA. STAT. § 1422. It appears that Dennison pursued this avenue when he allegedly sent similar parole documents to Raphael Chieke of SCI–Mahanoy's Equal Employment Office. (Doc. 46, Ex. II at ¶ 39–41). However, the Whistleblower Law does not protect the release of inmate psychological records to the news media and public advocates.

Given the nature of the documents at issue, we conclude that SCI–Mahanoy's interest in the efficient operation of its organization outweighs the free speech rights of Dennison to distribute confidential psychological records to non-authorized persons. Thus, we will grant judgment to Defendants Youron, Kowalsky, Unell and Klem insofar as Dennison alleges that he was fired in violation of the First Amendment for disclosing prison records to Ernest Preate, Ron Felton, and Fox–TV News.

### ii. Dennison's Other Free Speech Claims

In addition to his free speech claims regarding the distribution of confi-

dential prison records, Dennison further alleges that he was fired for verbally protesting discrimination in employment and parole determinations at SCI–Mahanoy. Defendants do not address these allegations directly other than to argue, as discussed above, that Dennison was fired for releasing confidential inmate records to non-authorized persons and for no other reason.

■ In instances, like the present one, where an employer denies that it has fired an employee because of allegedly protected speech, the balancing test employed in *Baldassare* is inapplicable. Instead, a court looks only to determine whether the speech at issue is protected speech. *San Filippo v. Bongiovanni*, 30 F.3d 424, 435 n. 11 (3d Cir.1994). Accordingly, we will briefly examine the instances of speech for which Dennison claims that defendants fired him to determine whether they constitute protected speech under the First Amendment.

■ Dennison makes a litany of allegations in a rambling and somewhat incoherent affidavit. He alleges, as best we can determine, that he made verbal complaints regarding racial discrimination in employment and parole determinations at SCI–Mahanoy. (Doc. 46, Ex. II at ¶¶ 26i, 26n, 26o, 26t, 26ll, 26ss, and 43). As discussed before, speech regarding racial discrimination in parole determinations addresses a matter of public concern. The same is true for speech on discrimination in employment decisions and or practices. *Azzaro*, 110 F.3d at 975–80. Accordingly, at trial, Dennison will bear the burden of showing that his protected speech was a substantial or motivating factor in the alleged retaliation of defendants. *Baldas-*

*sare*, 250 F.3d at 195. Defendants, in turn, can rebut Dennison's allegation of retaliation by demonstrating that Dennison would have been fired regardless of the speech detailed in court document 46 Ex. II, ¶¶ 26i, 26n, 26o, 26t, 26ll, 26ss, and 43.[8]

### b. Petition Clause Claims

■ In addition to his free speech claims, Dennison alleges that he was fired and otherwise retaliated against for filing grievances with government bodies regarding discrimination in employment and parole determinations. Retaliation for filing non-sham lawsuits, grievances, or other petitions with government bodies are analyzed under the First Amendment's Petition Clause. *San Filippo*, 30 F.3d at 434–35. Such petitions need not be on a matter of public concern. *Id.* at 441–42. To receive constitutional protection they need only be non-sham petitions filed within sanctioned channels of redress. *Id.*

Returning to Dennison's affidavit, he alleges that defendants retaliated against him for filing grievances with government bodies. (Doc. 46, Ex. II at ¶¶ 26g, 26h, 26m, 26q, 26w, and 26kk). Defendants have presented no evidence to suggest that these petitions were sham-petitions, and we find nothing in the record to suggest as much. Accordingly, at trial Dennison will bear the burden of establishing that his protected actions, the filing of petitions, was a substantial or motivating factor in the alleged retaliation of defendants. *Id.* at 443–44. Defendants can rebut Dennison's allegation of retaliation by demonstrating that Dennison would have been fired regardless of the petition allegations found in court document 46 Ex. II, ¶¶ 26g, 26h, 26m, 26q, 26w, and 26kk.[9]

---

**8.** The protected speech detailed in court document 46 Ex. II, ¶¶ 26i, 26n, 26o, 26t, 26ll,

26ss, and 43 is the only speech that will be considered at trial.

**9.** The protected petitions discussed in court

### 3. Fourteenth Amendment Claims

Defendants Youron, Kowalsky, Unell, and Klem move for summary judgment on Dennison's allegation that they violated his rights to substantive and procedural due process under the Fourteenth Amendment. We will grant defendants' motion.

#### a. Substantive Due Process

With regard to his substantive due process claim, Dennison appears to allege a denial of both a property right in his job at SCI–Mahanoy and a denial of his liberty interest in freedom of speech. Dennison's claims are without merit as a matter of law.

▮▮▮ The substantive component of the Fourteenth Amendment's Due Process Clause proscribes the deprivation of life, liberty, and property save when "constitutionally adequate procedures" are employed. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Even when such procedures are employed, government action may violate substantive rights when it constitutes an arbitrary abuse of power. *Nicholas v. Pennsylvania State Univ.,* 227 F.3d 133, 139–40 (3d Cir.2000).

▮▮▮ For Dennison to prevail on his substantive due process claim with regard to his job, he must establish that he has a property interest protected by the Fourteenth Amendment. *Id.* at 140. The right to property is an interest protected by the Fourteenth Amendment's Substantive Due Process Clause. But, not all property rights fall under the rubric of the substantive component of the Fourteenth Amendment. *Id.* The substantive component of the Fourteenth Amendment applies only to *fundamental* property interests. *Id.* at 140–41. Whether a property interest is fundamental is determined by reference to the Constitution and its historical purpose. *Id.* Thus, fundamental property rights are derived from the Constitution, not from other sources of law, such as state law. *Id.* at 140–41 (quoting and citing *Regents of Univ. of Michigan v. Ewing,* 474 U.S. 214, 229–30, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) (Powell, J., concurring)).

The Third Circuit has limited review of property interests under the Substantive Due Process Clause to claims involving real property ownership. *Id.* Real property ownership has been historically protected by the Constitution and is considered fundamental to American society. *Id.* (quoting and citing *Regents of Univ. of Michigan v. Ewing,* 474 U.S. 214, 229–230, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) (Powell, J., concurring)). Dennison's claim is not one in real property; rather, it is a claim stating a property interest in a job. It is not, therefore, a fundamental property interest protected by the substantive component of the Fourteenth Amendment. *Id.* at 141. Accordingly, Dennison cannot, as a matter of law, sustain his section 1983 suit based upon a violation of substantive due process with regard to his job, and we will grant defendants' motion for summary judgment.

▮▮▮ Dennison also cannot prevail on his free speech/substantive due process claim. Dennison's free speech claim falls under the First Amendment. The Supreme Court has made clear that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive

document 46 Ex. II, ¶¶ 26g, 26h, 26m, 26q, 26w, and 26kk are the only petitions that will be considered at trial.

due process,' must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Accordingly, Dennison has no free speech claim under the substantive component of the Fourteenth Amendment. We will grant defendants' motion for summary judgment on this claim.

#### b. Procedural Due Process

 Dennison further alleges that defendants violated his right to procedural due process under the Fourteenth Amendment when he was fired from his job at SCI–Mahanoy. Defendants counter that no procedural due process claim can survive in this matter because Dennison was a union class employee, covered by a contract providing for both a grievance procedure and an arbitration process involving his employer and union. Defendants have accurately stated the law in this area. *Dykes v. SEPTA*, 68 F.3d 1564, 1571–72 (3d Cir.1995) *cert. denied*, 517 U.S. 1142, 116 S.Ct. 1434, 134 L.Ed.2d 556 (1996). Dennison does not challenge the adequacy of the grievance and arbitration procedures at issue, and our review of the record reveals no obvious constitutional defect. Accordingly, we will grant defendants' motion on Dennison's procedural due process claim.

### B. Conspiracy Claims

Dennison alleges that Defendants Youron, Unell, and Klem conspired to violate his First and Fourteenth Amendment rights and seeks relief under 42 U.S.C. §§ 1983, 1985(3), and 1986. Those defendants now move for summary judgment on Dennison's conspiracy claims, and we will grant their motion in part and deny it in part.

#### 1. Section 1983 Conspiracy Claims

 To sustain a conspiracy claim under section 1983, Dennison must establish that: (1) defendants deprived him of a right secured by the Constitution or laws of the United States and (2) conspired to do so while acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Marchese v. Umstead*, 110 F.Supp.2d 361, 371 (E.D.Pa.2000). Additionally, " 'to [s]ufficiently allege a conspiracy, a plaintiff must show a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose.'" *Marchese*, 110 F.Supp.2d at 371 (quoting *Panayotides v. Rabenold*, 35 F.Supp.2d 411, 419 (E.D.Pa. 1999)) (other internal citations omitted). " 'A plaintiff must make specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events.'" *Id.* (quoting *Panayotides v. Rabenold*, 35 F.Supp.2d 411, 419 (E.D.Pa.1999)) (other internal citations omitted).

With regard to Dennison's First Amendment conspiracy claim, there is, as discussed earlier, sufficient evidence in the record from which a jury could conclude that defendants Youron, Kowalsky, Unell, and Klem violated Dennison's First Amendment free speech and petition rights. There is also evidence in the record supporting his conspiracy allegation. Dennison alleges that Defendants Klem and Unell threatened him with dismissal if he filed grievances or testified against defendants in related employment disputes. (Doc. 46, Ex. II at ¶¶ 26b, 261). He specifically alleges that Klem threatened to fire him if he testified in complaints brought by fellow employees, and that Unell, who witnessed the threat, said that he would deny

that Klem ever threatened Dennison. (Doc. 46, Ex. II at ¶ 261). Dennison's evidence is admittedly slim; however viewing the facts in his favor, as we must, it is sufficient to permit a jury to conclude that Klem and Unell had reached an understanding to conspire for his dismissal. Accordingly, we will deny Youron, Kowalsky, Unell, and Klem's motion for judgment on Dennison's First Amendment, section 1983 conspiracy claim.

We will, however, grant judgment to the moving defendants on Dennison's Fourteenth Amendment conspiracy claim. As discussed earlier in this memorandum, the moving defendants did not violate Dennison's rights under the Fourteenth Amendment. Accordingly, he can not sustain his corresponding conspiracy claim under section 1983.

### 2. Section 1985(3) Conspiracy Claims

Section 1985(3) applies to private conspiracies. *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 832, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). To sustain a conspiracy claim under section 1985(3) Dennison must establish:

(1) a conspiracy; (2) motivated by racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

*Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir.1997). Dennison's First Amendment conspiracy claim under section 1985(3) fails for a number of reasons. Foremost, Dennison does not allege that Defendants Youron, Kowalsky, Unell, and Klem conspired against him because of race based or class animus. Accordingly, we will grant moving defendants judgment on Dennison's section 1985(3) First Amendment conspiracy claim.

We will also grant judgment to the moving defendants on Dennison's Fourteenth Amendment conspiracy claim under section 1985(3). Dennison can not meet the second requirement of section 1985(3). Additionally, Dennison, as discussed before, has not suffered a violation of his Fourteenth Amendment rights in this case. Accordingly, he can not meet the fourth requirement of a section 1985(3) conspiracy claim.[10]

### C. Title VII and PHRA Claims

Dennison alleges that defendants fired him in violation of Title VII and the PHRA for reporting discriminatory conduct at SCI–Mahanoy. Defendants move for judgment on both Dennison's Title VII and PHRA claims.

### 1. Title VII Claims

Dennison seeks to hold SCI–Mahanoy and the individual defendants liable for retaliatory conduct in violation of section 704(a) of Title VII. Section 704(a) prohibits discrimination against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a

**10.** Dennison also seeks relief under 42 U.S.C. § 1986. "Section 1986 imposes liability on those who 'having knowledge that any of the wrongs conspired to be done, and mentioned in 42 U.S.C. § 1985, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do.'" *McDuffy v. Ko-* *val*, 226 F.Supp.2d 541, 551 (E.D.Pa.2002). Section 1986, therefore, is derivative of section 1985. *Id.* As Dennison can not establish a section 1985 conspiracy, he can not sustain his section 1986 claim. *Id.* Thus, we will grant Defendants Youron, Kowalsky, Unell, and Klem's motion for summary judgment on Dennison's section 1986 conspiracy claim.

charge, testified, assisted, or participated in any manner in an investigation … under this subchapter." 42 U.S.C. § 2000e–3(a). Defendants Dragovich, Youron, Kowalsky, Unell, and Klem correctly argue that individual employees who are not employers cannot be held liable under Title VII. *Dici v. Commonwealth,* 91 F.3d 542, 552 (3d Cir.1996). Accordingly, we will dismiss Dennison's Title VII claims against them. For its part, Defendant SCI–Mahanoy contends that Dennison was fired for disclosing confidential, inmate information, not for opposing an unlawful employment practice or participating in an activity protected by Title VII.[11]

 To establish a prima facie case of retaliation, Dennison must demonstrate (1) that he engaged in a protected activity; (2) that SCI–Mahanoy took an adverse employment action after or contemporaneous with his protected action; and (3) that a causal link exists between the protected activity and the adverse employment action. *Abramson v. William Paterson College,* 260 F.3d 265, 286 (3d Cir.2001). If Dennison establishes a prima facie case of retaliation, SCI–Mahanoy then bears the burden of offering a legitimate, non-retaliatory reason for its adverse employment action, firing Dennison. *Krouse v. American Sterilizer Co.,* 126 F.3d 494, 500 (3d Cir.1997). An employer's "burden at this stage is 'relatively light: it is satisfied if the defendant articulates any legitimate reason for the [adverse employment action]; the defendant need not prove that the articulated reason actually motivated the [action].'" *Id.* at 500–01 (quoting *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920 n. 2 (3d Cir.1997)) *cert. denied,* 522 U.S. 914, 118 S.Ct. 299, 139 L.Ed.2d 230 (1997) (brackets in original).

 If SCI–Mahanoy meets its burden, Dennison must convince the factfinder "both that [SCI–Mahanoy's] proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Id.* at 501. Dennison's burden at this point is to "prove that retaliatory animus played a role in [SCI–Mahanoy's] decisionmaking process and that it had a determinative effect on the outcome of that process." *Id.*

Thus, as the Third Circuit explains, for an employer such as SCI–Mahanoy to prevail on a motion for summary judgment it must:

> show that the trier of fact could not conclude, as a matter of law, (1) that retaliatory animus played a role in the employer's decisionmaking process and (2) that it had a determinative effect on the outcome of that process. This may be accomplished by establishing the plaintiff's inability to raise a genuine issue of material fact as to either: (1) one or more elements of the plaintiff's prima facie case or, (2) if the employer offers a legitimate non-retaliatory reason for the adverse employment action, whether the employer's proffered explanation was a pretext for retaliation.

*Id.* (citations omitted). In this case, SCI–Mahanoy does not attack Dennison's prima facie case. Instead, SCI–Mahanoy argues that a factfinder could not conclude, as a matter of law, that its reason for firing Dennison was a pretext for retaliation.

 SCI–Mahanoy states that it fired Dennison for disclosing confidential, inmate psychological evaluation reports to unauthorized persons. Dennison admits in his deposition that he disclosed such reports in an effort to expose alleged dis-

---

**11.** SCI–Mahanoy does not contest that Congress legally abrogated the states' Eleventh Amendment immunity when Title VII became law. *Shawer v. Indiana Univ. of Pa.,* 602 F.2d 1161, 1164 (3d Cir.1979).

crimination against black inmates during parole determinations. He further admits that the disclosure of the reports violated the Pennsylvania Department of Corrections Code of Ethics. (Doc. 36 at 43–45). The parties' arguments on this point are moot, however, as Dennison's disclosure of inmate reports was not a protected activity under Title VII; therefore Dennison has failed to make out a prima facie case under that statute.

■ As noted above, section 704(a) of Title VII prohibits retaliation for opposing an unlawful employment practice or participating in an investigation of such a practice. 42 U.S.C. § 2000e–3. Dennison alleges here that he was fired, in part, for reporting discriminatory conduct against inmates at SCI–Mahanoy. Discrimination against inmates is certainly actionable under another federal statute, but it is not actionable in this case under Title VII. Title VII prohibits discrimination on the basis of race, color, religion, sex, or national origin in the employment context. 42 U.S.C. § 2000e–2(a).[12] The alleged discrimination in parole determinations at issue in this case is not covered by Title VII because it did not occur in the context of an employment decision. Dennison's op-

position to such discrimination, consequently, is not a protected activity under section 704(a). Accordingly, we will grant judgment to SCI–Mahanoy on Dennison's Title VII retaliation claim to the extent that it seeks damages for reporting alleged discrimination in parole determinations. Insofar as Dennison seeks damages for alleged retaliation for reporting discrimination in employment practices, however, his Title VII claim against SCI–Mahanoy survives.[13]

### 2. PHRA Claims

■ Dennison seeks to hold SCI–Mahanoy and the individual defendants liable for retaliatory conduct in violation of section 955(d) of the PHRA.[14] 43 PA. STAT. § 955(d). Section 955(d) makes it illegal "[f]or any person [or] employer ... to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

■ SCI–Mahanoy correctly argues that as a Commonwealth agency it possess

---

**12.** Section 2000e–2 states, in relevant part:
 **(a) Employer practices**
 It shall be an unlawful employment practice for an employer-
 **(1)** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
 **(2)** to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin. . . .

**13.** The record contains evidence that Dennison filed reports regarding possible racial and sexual discrimination in hiring and work assignment decisions at SCI–Mahanoy. *See* Doc. 46 at Exs. N, O, S, Z. As noted earlier, Dennison alleges that defendants retaliated against him, in part, for reporting such discrimination. *See supra* page 2. SCI–Mahanoy does not challenge Dennison's complaint in this regard, and therefore his Title VII retaliation claim survives.

**14.** Dennison does not explicitly state that he seeks to hold the defendants liable under 43 PA. STAT. § 955(d). He only states a general retaliation claim under the PHRA. Thus, we assume he seeks relief under section 955(d).

immunity in federal court for claims under the PHRA. *Williams v. Pennsylvania State Police Bureau of Liquor Control Enforcement*, 108 F.Supp.2d 460, 465 (E.D.Pa.2000). Pennsylvania has waived sovereign immunity in its own courts under the PHRA. *Mansfield State College v. Kovich*, 46 Pa.Cmwlth. 399, 407 A.2d 1387, 1388 (1979). It has not, however, waived Eleventh Amendment immunity from suit in federal court under the PHRA. *Irizarry v. Commonwealth*, 1999 WL 269917, at *4 (E.D.Pa. Apr.19, 1999). Therefore, we will grant SCI–Mahanoy's motion for judgment on Dennison's PHRA claim.[15]

The immunity SCI–Mahanoy enjoys in federal court does not transfer to Defendants Youron, Kowalsky, Unell, and Klem in their individual capacities. Under Pennsylvania law, Commonwealth employees enjoy the same immunity in state court as the Commonwealth does, so as long as such employees are acting within the scope of their employment. 1 PA. CONS. STAT. § 2310. As noted above, however, the Commonwealth has waived its immunity in state court under the PHRA, *Mansfield State*, 407 A.2d at 1388, and the Eleventh Amendment is applicable only to the states and their agencies, not individual state employees sued in their personal capacities. Accordingly, Defendants Youron, Kowalsky, Unell, and Klem would not be immune from suit in the courts of the Commonwealth under the PHRA, and they are not immune from suit in federal court under that statute.

In his complaint, Dennison alleges that the individual defendants retaliated against him, in violation of the PHRA, for reporting discrimination in employment and parole determinations. As explained in our discussion of his Title VII retaliation claim,[16] Dennison has no cause of action for reporting alleged discrimination against inmates at SCI–Mahanoy. We will therefore grant judgment to Defendants Youron, Kowalsky, Unell, and Klem on Dennison's PHRA claim insofar as it rests upon retaliation for reporting alleged discriminatory parole practices. Insofar as Dennison seeks damages for alleged retaliation for reporting discrimination in employment practices, however, his PHRA claims against Defendants Youron, Kowalsky, Unell, and Klem survive.

## D. Pennsylvania Common Law Tort Claims

In his complaint, Dennison has brought claims for wrongful discharge and intentional infliction of emotional distress against all of the defendants. SCI–Mahanoy and the individual defendants assert immunity from suit on Dennison's Pennsylvania common law claims.

We consider Dennison's common law claims pursuant to our supplemental jurisdiction and are bound by Pennsylvania law. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). SCI–Mahanoy and the individual defendants are immune from suit for wrongful discharge and intentional infliction of emotional distress. The Commonwealth has not waived its sovereign immunity with regard to itself or the indi-

15. We also grant judgment on any PHRA claim Dennison has brought against the individual defendants in their official capacities.

16. Pennsylvania courts generally interpret the PHRA in accord with its federal counterparts. *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir.1996). Consequently, it is proper to treat Dennison's PHRA claims as coextensive with his Title VII claims, and our Title VII analysis applies, where appropriate, with equal force to his PHRA claims.

vidual defendants on these causes of action. *See* 42 PA. CONS. STAT. §§ 8521–22; 1 PA. CONS. STAT. § 2310. Accordingly, we will grant defendants' motion for summary judgment on Dennison's wrongful discharge and intentional infliction of emotional distress claims.

### E. Pennsylvania Whistleblower Law Claims

■ Dennison seeks relief from Defendants Youron, Kowalsky, Unell, and Klem for alleged violation of Pennsylvania's Whistleblower Law, 43 PA. STAT. § 1421 *et seq.*[17] The Whistleblower Law prohibits, among other things, retaliation against employees who report wrongdoing or waste to their employers or other appropriate authorities. 43 PA. STAT. § 1423(a). Dennison argues in his brief that he was fired on June 30, 2000 for reporting both discrimination in parole determinations and hiring practices at SCI–Mahanoy over an extended period of time. Defendants Youron, Kowalsky, Unell, and Klem move for judgment on Dennison's Whistleblower Law claims.

■ To make out a prima facie case under the Whistleblower Law, Dennison must show by a preponderance of the evidence that he made a good faith report of an instance of wrongdoing or waste to his employer or an appropriate authority. 43 PA. STAT. § 1424(a). Defendants Youron, Kowalsky, Unell, and Klem do not challenge Dennison's prima facie case; instead they argue that Dennison was fired for violating the Department of Corrections Code of Ethics. To support their

position, moving defendants must meet the burden set out for employers under section 1424(c) of the Whistleblower Law, which states: "It shall be a defense to an action under this section if the defendant proves by a preponderance of the evidence that the action by the employer occurred for separate and legitimate reasons, which are not merely pretextual."[18]

The moving defendants have failed to prove, by a preponderance of the evidence, that retaliation was not a motive behind firing Dennison. Dennison cites a number of alleged instances of discrimination in employment and parole determinations, and he claims that he was fired for reporting these incidents to government officials. *See* Doc. 46 Ex. II, ¶¶ 26g, 26h, 26i, 26m, 26n, 26o, 26q, 26t, 26w, 26kk, 26ll, 26ss, and 43.[19] It is not clear from the record whether these incidents would support a prima facie whistleblower case; however defendants have not challenged these employment and parole discrimination allegations in their motion, and we are therefore constrained to rule that the moving defendants have failed to meet their burden under the Whistleblower Law. 43 PA. STAT. § 1424(c). Thus, Dennison's whistleblower claims survive insofar as they relate to his dismissal as a result of reports regarding discrimination in employment and parole determinations, except as noted below.

■ Moving defendants motion for judgment on Dennison's whistleblower claims is not entirely without merit. Dennison's admitted distribution of confiden-

---

**17.** Dennison also alleged in his complaint that SCI–Mahanoy violated the Whistleblower Law. We dismissed that claim pursuant to the Eleventh Amendment in our opinion of June 8, 2001. (Doc. 13).

**18.** Defendants Youron, Kowalsky, Unell and Klem do not challenge that they are employ-

ers under the Whistleblower Law. 43 PA. STAT. § 1422.

**19.** These are the only complaints that will be considered under Dennison's whistleblower claim at trial.

tial prison records to unauthorized persons is not protected by the Whistleblower Law. The Whistleblower Law protects only good faith reports of wrongdoing to *employers* or *appropriate authorities*. 43 PA. STAT. § 1423 (emphasis added). Here Dennison released prison records to Ernest Preate, a prison reform advocate at the time, Ron Felton, a local NAACP official, and Fox–TV News. Preate, Felton, and Fox–TV are not appropriate authorities under the Whistleblower Law. *See Id.* at § 1422 (defining which government bodies and personnel are appropriate authorities); *Spiropoulos v. Unemployment Compensation Bd.*, 654 A.2d 642, 645 (Pa. Commw.Ct.1995) (holding that Whistleblower Law protects communications with appropriate authorities only). Consequently, Dennison has no whistleblower claim based upon his disclosure of prison records to Preate, Felton, and Fox–TV. We will, therefore, grant Youron, Kowalsky, Unell, and Klem's motion for summary judgment on the whistleblower claim insofar as it applies to the distribution of confidential prison records to private individuals.

### F. Conclusion

For the reasons outlined above, we will grant in part and deny part defendants' motion for summary judgment. The following issues remain for resolution at trial:

1. Whether Defendants Youron, Kowalsky, Unell and Klem violated the First Amendment's Free Speech Clause by retaliating against Dennison for verbal complaints regarding discrimination in employment and parole determinations.

2. Whether Defendants Youron, Kowalsky, Unell and Klem violated the First Amendment's Petition Clause by retaliating against Dennison for his filing of grievances.

3. Whether Defendants Youron, Kowalsky, Unell and Klem conspired to violate Dennison's First Amendment rights and thereby are liable under section 1983.

4. Whether SCI–Mahanoy violated Title VII by retaliating against Dennison for reporting discrimination in employment decisions.

5. Whether Defendants Youron, Kowalsky, Unell and Klem violated the PHRA by retaliating against Dennison for reporting discrimination in employment decisions.

6. Whether Defendants Youron, Kowalsky, Unell and Klem violated the Pennsylvania Whistleblower Law by retaliating against Dennison for his reports of employment discrimination.

An appropriate order follows.

### ORDER

**AND NOW**, to wit, this 9th day of June 2003, it is hereby **ORDERED** that defendants' motion for summary judgment (Doc. 29) is **GRANTED** in part and **DENIED** in part as follows:

1. Judgment is **GRANTED** to all remaining defendants on Dennison's section 1983, Fourth and Fifth Amendment claims.

2. Judgment is **GRANTED** to all remaining defendants on Dennison's claims under 42 U.S.C. § 1984.

3. Judgment is **GRANTED** to all remaining individual defendants on Dennison's section 1983 official capacity suits.

4. Judgment is **GRANTED** to Defendants Youron, Kowalsky, Unell, and Klem on Dennison's section 1983, First Amendment free speech claims insofar as they rely upon his distribution of inmate records to unauthorized persons.

5. Judgement is **DENIED** to Defendants Youron, Kowalsky, Unell, and Klem on Dennison's section 1983, First Amendment free speech claims insofar as they concern verbal protests of discrimination in employment and parole decisions.

6. Judgment is **DENIED** to Defendants Youron, Kowalsky, Unell, and Klem on Dennison's section 1983, First Amendment Petition Clause claims.

7. Judgment is **GRANTED** to Defendants Youron, Kowalsky, Unell, and Klem on Dennison's section 1983, Fourteenth Amendment substantive and procedural due process claims.

8. Judgment is **DENIED** to Defendants Youron, Kowalsky, Unell, and Klem on Dennison's section 1983, First Amendment conspiracy claim.

9. Judgment is **GRANTED** to Defendants Youron, Kowalsky, Unell, and Klem on Dennison's section 1983, Fourteenth Amendment conspiracy claim.

10. Judgment is **GRANTED** to Defendants Youron, Kowalsky, Unell, and Klem on Dennison's section 1985(3) conspiracy claims.

11. Judgment is **GRANTED** to Defendants Youron, Kowalsky, Unell, and Klem on Dennison's section 1986 conspiracy claims.

12. Judgment is **GRANTED** to Defendants Youron, Kowalsky, Unell, and Klem on Dennison's Title VII claims.

13. Judgment is **GRANTED** to Defendant SCI–Mahanoy on Dennison's Title VII claim insofar as it seeks relief for alleged retaliation for reporting discrimination in parole determinations.

14. Judgment is **DENIED** to Defendant SCI–Mahanoy on Dennison's Title VII claim insofar as it seeks relief for alleged retaliation for reporting discrimination in employment determinations.

15. Judgment is **GRANTED** to Defendant SCI–Mahanoy on Dennison's PHRA claim.

16. Judgment is **GRANTED** to Defendants Youron, Kowalsky, Unell, and Klem on Dennison's PHRA claim insofar as it seeks relief for reporting alleged discrimination in parole practices.

17. Judgment is **DENIED** to Defendants Youron, Kowalsky, Unell, and Klem on Dennison's PHRA claim insofar as it seeks relief for reporting alleged discrimination in employment practices.

18. Judgment is **GRANTED** to all remaining defendants on Dennison's wrongful discharge and intentional infliction of emotional distress claims.

19. Judgment is **GRANTED** to Defendants Youron, Kowalsky, Unell, and Klem on Dennison's whistleblower claim insofar as it seeks relief for the distribution of inmate records to unauthorized persons.

20. Judgment is **DENIED** to Defendants Youron, Kowalsky, Unell, and Klem on Dennison's whistleblower claim in all other respects.